703 So.2d 492 (1997)
ACandS, INC. f/k/a Armstrong Contracting & Supply Corporation, Appellant,
v.
Carol H. REDD, Appellee.
No. 95-2822.
District Court of Appeal of Florida, Third District.
December 10, 1997.
*493 Blaire & Cole and Susan J. Cole, Coral Gables; Patillo & McKeever and Jean Bice, Ocala; Cooper & Wolfe, Marc Cooper and Maureen E. Lefebvre, Miami, for appellant.
Holland & Knight, Daniel S. Pearson, Christopher N. Bellows and Lenore C. Smith, Miami, for appellee.
Before NESBITT, COPE and GODERICH, JJ.

On Rehearing
GODERICH, Judge.
We grant the appellee, Carol Redd's, unopposed motion for rehearing and substitute the opinion filed on July 30, 1997, with the following opinion.
The defendant, ACandS, Inc., appeals from an adverse final judgment and from the denial of its post-judgment motion for a new trial. We reverse.
In 1991, Dr. James V. Redd filed a personal injury suit against ACandS, and his wife, Carol Redd, filed a derivative claim for loss of consortium. Dr. Redd alleged that he was diagnosed with mesothelioma in October 1989, and that he had developed mesothelioma as a result of exposure to ACandS' asbestos products.
On March 27, 1995, the cause proceeded to trial. The plaintiffs presented Dr. Redd's videotape deposition testimony and the live testimony of his surgeons and his wife. These witnesses gave explicit, graphic testimony about Dr. Redd's physical condition, the surgeries that were performed, the radiation treatments he underwent, and the pain he endured as a result. On April 1st, during a weekend jury recess, Dr. Redd died from the mesothelioma.
When the trial resumed, the parties and the court discussed the impact that Dr. Redd's death would have on the trial. Based on Taylor v. Orlando Clinic, 555 So.2d 876 (Fla. 5th DCA 1989), review denied, 567 So.2d 435 (Fla.), and review denied, 567 So.2d 436 (Fla.1990), the trial court concluded that Dr. Redd's personal injury claim abated with his death, but that Carol Redd's consortium claim survived. The defense requested a mistrial on the basis that the jury would be influenced in the loss of consortium claim by the significant testimony that they heard regarding Dr. Redd's damages. The court denied the motion.
The court informed the jury of Dr. Redd's death, and the trial continued. Carol Redd resumed her testimony and when asked about the impact that Dr. Redd's illness had on their marriage, she continued to give testimony about Dr. Redd's suffering. The defense objected to her testimony, and Carol Redd apologized stating that she was having a difficult time expressing herself since her husband's death on Saturday. Carol Redd then continued to testify about her husband's suffering and eventually concluded with a highly emotional description of her husband's actual death. The defense then renewed its motion for a mistrial, and the court denied it.
The case proceeded, and the jury returned a verdict finding ACandS liable and awarding Carol Redd $7.2 million in damages for loss of consortium. Subsequently, the trial court denied ACandS post-trial motion for a new trial, and this appeal follows.
ACandS contends that the trial court erred by allowing the trial to continue on Carol Redd's loss of consortium claim after Dr. Redd died from mesothelioma. We agree.
The Florida Wrongful Death Act provides, in relevant part, that "[w]hen a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." § 768.20, Fla. Stat. (1995). Clearly, in the instant case, when Dr. Redd died from mesothelioma, the trial court properly concluded that his personal injury action abated.
However, the issue before us is whether Carol Redd's derivative cause of action for loss of consortium survived Dr. Redd's death. We conclude that it did not.
In Gates v. Foley, 247 So.2d 40, 45 (Fla.1971), the Florida Supreme Court found that where a husband's cause of action had been terminated by an adverse judgment on the merits, the wife's cause of action for loss of consortium was barred. The Florida Supreme Court held that "[a wife's] right of *494 action [for loss of consortium] is a derivative right and she may recover only if her husband has a cause of action against the same defendant." Gates, 247 So.2d at 45. In other words, "[a wife's] claim for loss of consortium is derivative in nature and wholly dependent on her husband's ability to recover." Faulkner v. Allstate Ins. Co., 367 So.2d 214, 217 (Fla.1979)(citing Gates).
Applying this rationale to the instant case, where the husband's cause of action for personal injury abated with his death, the wife's cause of action for loss of consortium also abated. See Fuller v. Hahn, 313 So.2d 419, 420-21 (Fla. 1st DCA 1975)(holding that where a spouse is killed as a result of the injuries giving rise to a negligence action, damages by reason of loss of services, society, affection, consortium and funeral expenses incurred as a result of death are recoverable only in a wrongful death action, as opposed to a negligence action).
Carol Redd argues that this is the wrong conclusion and that we should follow the Fifth District's holding in Taylor that "[t]he wife's cause of action for loss of consortium, while derived from the personal injury to her husband, survives the death of her husband ..., whose own personal injury action did not survive his death." Taylor, 555 So.2d at 878. The Taylor court cites several cases in support of this proposition, including Busby v. Winn & Lovett Miami Inc., 80 So.2d 675 (Fla.1955); Orange County v. Piper, 523 So.2d 196 (Fla. 5th DCA), review denied, 531 So.2d 1354 (Fla.1988); Ryter v. Brennan, 291 So.2d 55 (Fla. 1st DCA), cert. denied, 297 So.2d 836 (Fla.1974); and Resmondo v. International Builders of Florida, Inc., 265 So.2d 72 (Fla. 1st DCA 1972). We do not read these cases as the Taylor court did. Rather, instead of reading these cases as standing for the proposition that the loss of consortium claim survives the primary action, we read these cases to stand for the proposition that the primary cause of action for personal injury and the derivative cause of action for loss of consortium are "separate and distinct." Busby, 80 So.2d at 676 (holding that a husband's consortium claim is "separate and distinct" from his wife's personal injury claim and may be maintained without joinder of the injured wife); Piper, 523 So.2d at 197-98 (holding that a wife's failure to give notice by filing her loss of consortium claim with the county or by joining her husband's personal injury claim warranted its dismissal); Ryter, 291 So.2d at 56-57 (holding that husband's release did not abate wife's cause of action for loss of consortium, which was a property right in her own name); Resmondo, 265 So.2d at 73-74 (holding that entry of a consent judgment in favor of husband did not abate wife's cause of action for loss of consortium).
By the term "separate and distinct," these courts do not mean that a derivative cause of action can exist in the absence of a primary cause of action. Instead, the term "separate and distinct" means that a spouse can maintain a consortium claim in situations where there has not been joinder of the injured spouse, Busby, or where the injured spouse has executed a consent judgment or a release as to his or her claim. Ryter; Resmondo. Accordingly, we decline to follow Taylor and certify conflict with the Fifth District.
We are further persuaded that the legislature did not intend for a spouse's consortium claim to survive an injured spouse's death from his or her injuries by the fact that the legislature has provided for wrongful death damages that are inclusive of a spouse's loss of consortium damages. The Gates court explained:
[Loss of consortium means] the companionship and fellowship of husband and wife and the right of each to the company, cooperation and aid of the other in every conjugal relation. Consortium means much more than mere sexual relation and consists, also, of that affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance so necessary to a successful marriage.
Gates, 247 So.2d at 43. Similarly, the Florida Wrongful Death Act provides that "[t]he surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury." § 768.21(2), Fla. Stat. (1995). Further, the Act provides that "[e]ach survivor *495 [including the decedent's spouse[1]] may recover the value of lost support[2] and services[3] from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value." § 768.21(1), Fla. Stat. (1995). Because the Act allows recovery for these types of damages from the date of injury, rather than the date of death, they are inclusive of the types of damages that would be associated with a loss of consortium claim.
Accordingly, we find that the trial court erred by allowing the trial to continue on Carol Redd's loss of consortium claim after Dr. Redd died, and we reverse the resulting final judgment.
Although this issue is dispositive, we will address two of the other issues raised in this appeal. ACandS contends that the trial court abused its discretion by repeatedly denying its motions for mistrial and by denying its motion for a new trial on the basis that the verdict was excessive. We agree.
In the instant case, the jury heard extensive graphic, detailed testimony about the pain and suffering Dr. Redd endured. After Dr. Redd's cause of action abated with his death, the jury was presented with even more highly emotional testimony about Dr. Redd's suffering and his actual death. Although some of this testimony may have been relevant to Carol Redd's claim for loss of consortium, we find that the jury's award of $7.2 million for five and a half years of loss of consortium[4] is so excessive that it is evidence that the prejudicial testimony complained of by the defendant was in fact so extensive that its influence pervaded the trial such that a fair trial was impossible. Harbor Ins. Co. v. Miller, 487 So.2d 46, 47 (Fla. 3d DCA), review denied, 496 So.2d 143 (Fla. 1986). Therefore, the trial court abused its discretion by denying the defendant's motions for mistrial, and as an alternative basis for reversal, we find that the defendant is entitled to a new trial.
Reversed; conflict certified.
NESBITT, J., concurs.
COPE, J., concurs with opinion.
COPE, Judge, concurring.
I join the opinion of the court.
By motion for rehearing, both parties have also requested that we address the appellant's third point on appeal, the claim that ACandS is entitled to a new trial because of false testimony. In my view, the defendant is entitled to a new trial for this reason as well.
The theory of Dr. Redd's case was that he had only been exposed to asbestos during a hospital renovation in Charleston, South Carolina, in the mid-1960s. On multiple occasions, Dr. Redd specifically testified that he had no earlier or later exposure. His exposure sheets revealed a claim of exposure to products of Fibreboard, another asbestos manufacturer, but Dr. Redd's testimony was unequivocal that his exposure was confined to the facility at Charleston, South Carolina, in the mid-1960s.
After verdict, in order to calculate set-offs on account of settlement, counsel for the Redds gave defendant documentation for a settlement which had been reached with Fibreboard while the present case was pending. *496 The documents disclosed that the claim against Fibreboard was for an exposure which occurred in 1957 during construction work in Nashville, Tennessee. According to defendant, the latency period for Dr. Redd's disease was short if measured from the mid-1960s, but within the midrange if measured from 1957. Defendant has also shown that there was untruthful testimony by Dr. Redd in another phase of the case, the details of which need not be reviewed here, which may have materially affected the defense of the consortium claim. Whether these material mispresentations are considered individually or collectively, defendant is entitled to a new trial. See Southern Trenching, Inc. v. Diago, 600 So.2d 1166 (Fla. 3d DCA 1992); Sledge v. Richards, 592 So.2d 316 (Fla. 3d DCA 1991); McFarlin v. Jack Eckerd Corp., 581 So.2d 181 (Fla. 3d DCA 1991); Kline v. Belco, Ltd., 480 So.2d 126 (Fla. 3d DCA 1985); Roberto v. Allstate Ins. Co., 457 So.2d 1148 (Fla. 3d DCA 1984); Gaiter v. Winn Dixie Stores, Inc., 376 So.2d 912 (Fla. 3d DCA 1979). If during the proceedings below, trial counsel knew that Dr. Redd's testimony was untruthful, counsel had an independent obligation to set the record straight.
NESBITT, J., concurs.
NOTES
[1] § 768.18(1), Fla. Stat. (1995).
[2] Section 768.18(3), Florida Statutes (1995), defines "support" as "contributions in kind as well as money."
[3] Section 768.18(4), Florida Statutes (1995), defines "services," in part, as "tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to the survivors of the decedent."
[4] Because Carol Redd proceeded with her loss of consortium claim on the theory that it survived Dr. Redd's death, she sought damages for the loss of consortium that she suffered during the five-and-one-half year period that Dr. Redd was ill with cancer, that is, from the date that Dr. Redd was diagnosed with mesothelioma in October 1989 until the date of his death in April 1995. Because Carol Redd's action was not brought pursuant to the wrongful death statute, she did not seek any damages for Dr. Redd's death or for any economic or non-economic damages resulting from his death. Accordingly, the $7.2 million award was solely to compensate her for the loss of Dr. Redd's consortium during the time of his illness until his death.