Levine, J.
The question presented for our review is whether the Florida Wrongful Death Act supersedes the common law requirement that a spouse must be married to the decedent before the date of the decedent’s injury to recover damages for loss of consortium. Stated another way, did the legislative enactment, giving the estate’s representatives and survivors a remedy not found in the common law, “explicitly,” “clearly,” and “unequivocally” abrogate the common law requirements to recover consortium damages when those damages are awarded under the Wrongful Death Act. Because there can be no change in the common law unless the statute is “explicit and clear in that regard” and the Wrongful Death Act does not “explicitly,” “clearly,” and “unequivocally” abrogate the common law rule, we hold that a spouse who was not married to a decedent at the time of the decedent’s injury may not recover consortium damages as part of a wrongful death suit. Thus, we find that the trial court did not err in entering an order of dismissal, and subsequently entering a final judgment. We therefore affirm.
John Kelly and his wife, Janis Kelly, filed an action against appellees for negligence, strict liability, and for Janis Kelly’s loss of consortium. During the course of the litigation, the husband died, and the wife amended the complaint, dropping her loss of consortium claim and adding a wrongful death claim, which included a demand for loss of consortium damages.
The decedent worked in construction and was exposed to asbestos during the years of 1973 to 1974. The decedent and appellant did not marry until 1976. In 2014, the decedent was diagnosed with mesothelioma and alleged that his exposure to asbestos caused the disease. The decedent died from mesothelioma in 2015.
Appellees moved to dismiss the wife’s wrongful death claim, arguing that a spouse must be married to the injured party at the time of the injury for the spouse to bring a claim for loss of consortium and that the wrongful death claim sought damages for loss of consortium. Appellees argued it was undisputed that appellant was not married to the decedent when the decedent was injured. The trial court granted the motion to dismiss and dismissed that portion of appellant’s complaint seeking consortium damages under the Wrongful Death Act. Appellant then voluntarily dismissed the remaining claims for negligence and strict liability. The trial court entered a final judgment, and this appeal ensued.
The standard of review that we use is de novo. Solorzano v. First Union Mortg. Corp., 896 So.2d 847, 849 (Fla. 4th DCA 2005).
The tort of wrongful death did not exist at common law, and a personal injury claim did not survive the death of the injured party. Nissan Motor Co. v. Phlieger, 508 So.2d 713, 714 (Fla. 1987). As a result, the Florida Legislature created a cause of action, wrongful death, to allow for a claim that survived the death of the injured party. See § 768.16, Fla. Stat. (2015).
The purpose of the Florida Wrongful Death Act is to provide a “separate and independent” cause of action since the original cause of action for personal injury did “not survive” the death of the injured party. City of Pompano Beach v. T.H.E. Ins. Co., 709 So.2d 603, 605 (Fla. 4th DCA 1998). The passage of the Wrongful Death Act remedied this “anomaly.” Variety Children’s Hosp. v. Perkins, 445 So.2d 1010, 1012 (Fla. 1983). It is “thus clear that the paramount purpose of the Florida Wrongful Death Act is to prevent a tortfeasor from evading liability for his *343 misconduct when such misconduct results in death.” Id. Thus, the statute explicitly, clearly, and unequivocally supersedes the common law by allowing the wrongful death cause of action to proceed even after the death of the injured party. See id.
Under the Wrongful Death Act, the decedent’s personal representative “shall recover for the benefit of the decedent’s survivors and estate all damages, as specified in this act, caused by the injury resulting in death.” § 768.20, Fla. Stat. (2015). Survivors are defined as
the decedent’s spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the child born out of wedlock of a mother, but not the child born out of wedlock of the father unless the father has recognized a responsibility for the child’s support.
§ 768.18(1), Fla. Stat. (2015).
As to damages, the Wrongful Death Act provides:
(1) Each survivor may recover the value of lost support and services from the date of the decedent’s injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor’s relationship to the decedent, the amount of the decedent’s probable net income available for distribution to the particular survivor, and the replacement value of the decedent’s services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent and the period of minority, in the case of healthy minor children, may be considered.
(2) The surviving spouse may also recover for loss of the decedent’s companionship and protection and for mental pain and suffering from the date of injury.
§ 768.21, Fla. Stat. (2015). These damages “are inclusive of a spouse’s loss of consortium damages” and allows for a spouse to recover damages for loss of consortium even after the decedent’s death. See ACandS, Inc. v. Redd, 703 So.2d 492, 494 (Fla. 3d DCA 1997) (stating that “the legislature did not intend for a spouse’s consortium claim to survive an injured spouse’s death from his or her injuries by the fact that the legislature has provided for wrongful death damages that are inclusive of a spouse’s loss of consortium damages”). Indeed, in this case, after the decedent died, appellant amended her complaint to replace her loss of consortium claim with a wrongful death claim that included a demand for the same exact damages as her prior loss of consortium claim.
Finally, the legislature announced that the public policy for the creation of the statute was to “shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer.” § 768.17, Fla. Stat. (2015). The statute is “remedial” and “shall be liberally construed.” Id. Nevertheless, although the statute is “remedial,” “we cannot construe the statutory provisions so ‘liberally’ as to reach a result contrary to the clear intent of the legislature.” Stern v. Miller, 348 So.2d 303, 308 (Fla. 1977).
Appellant argues that the passage of the Wrongful Death Act, explicitly, clearly, and unequivocally superseded the common law relating to the damages resulting from “loss of consortium.” Under the loss of consortium tort, the plaintiff may recover damages for the loss of
the companionship and fellowship of husband and wife and the right of each to the company, cooperation and aid of the other in every conjugal relation. *344 Consortium means much more than mere sexual relation and consists, also, of that affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance so necessary to a successful marriage.
Gates v. Foley, 247 So.2d 40, 43 (Fla. 1971).
Significantly, under the common law of loss of consortium, the parties must have been married to one another at the time of the injury to recover damages for loss of consortium. Tremblay v. Carter, 390 So.2d 816, 817 (Fla. 2d DCA 1980). As the court in Tremblay explained, the rationale for the common law rule is that
[sjince a cause of action for personal injury and the derivative rights flowing therefrom ordinarily accrue when the tort is committed, the courts concluded that to permit an unmarried person to claim loss of consortium upon his marriage to an injured spouse would have the effect of allowing him to marry into the cause of action.

Id

In the present case, the decedent’s injury occurred when he was exposed to asbestos. See Am. Optical Corp. v. Spiewak, 73 So.3d 120, 129 (Fla. 2011) (“Here, a foreign substance—asbestos fibers—were inhaled and became embedded in the lungs of the plaintiffs without their knowledge or consent. This, like the electric shock suffered by the plaintiff in Clark [v. Choctawhatchee, 107 So.2d 609 (Fla. 1959)], constitutes an actual injury that has been inflicted upon the bodies of the plaintiffs.”). Thus, because the decedent was injured before appellant married him, for appellant to prevail in her claim, we must find that the Wrongful Death Act specifically supersedes the common law of loss of consortium.
We look to the language of the Wrongful Death Act. In interpreting a statute, “the plain meaning of the statutory language is the first consideration.” St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982). There is, of course, the rule of statutory interpretation stating that statutes in derogation of the common law are to be strictly construed. Carlile v. Game & Fresh Water Fish Comm’n, 354 So.2d 362, 364 (Fla. 1977). But since the Wrongful Death Act is a remedial statute, “the general rule of strict construction does not, in Florida, apply to a remedial statute in derogation of the common law.” BellSouth Telecomms., Inc. v. Meeks, 863 So.2d 287, 290 (Fla. 2003). See also Perkins, 445 So.2d at 1012 (basing its decision “upon the language contained in section 768.19, Florida Statutes (1981)”); Toombs v. Alamo Rent-A-Car, Inc., 833 So.2d 109, 118 (Fla. 2002) (holding that “the language of the Act” precluded the plaintiff from recovering).
Whether the legislature intended for the Wrongful Death Act to supersede the common law of loss of consortium “depends upon the legislative intent as manifested in the language of the statute.” Thornber v. City of Fort Walton Beach, 568 So.2d 914, 918 (Fla. 1990). “The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard.” Id. Thus, “[u]nless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.” Id.
In Thomber, the “express language” of the statute in question made “no mention of whether it superseded the common law with regard to the circumstances” at issue. Id Thus, the statute did not “replace the common law completely.” Id. See also Honeywell Int'l., Inc. v. Guilder, 23 So.3d *345 867, 870 (Fla. 3d DCA 2009) (finding that the legislature clearly intended to create a child’s right to parental consortium). Indeed, changes to the common law must come through the legislature in the form of statutes. See Kitchen v. K-Mart Corp., 697 So.2d 1200, 1207 (Fla. 1997) (“[A] statute will not displace the common law unless the legislature expressly indicates an intention to do so.”).
Applying the principles of Thom-ber to the present case leads us to the conclusion that the statutory language of the Wrongful Death Act does not, directly or indirectly, abrogate or supersede the common law requirement that the spouse must be married to the injured party at the time of the injury to recover for loss of consortium. Here, the plain language of the statute shows that the legislature clearly intended that the Wrongful Death Act allow for a surviving spouse to recover “consortium-type” damages. See ACandS, 703 So.2d at 494. The legislature is presumed to know of the common law limitation for recovering loss of consortium damages. Williams v. Jones, 326 So.2d 425, 435 (Fla. 1975) (“[Tjhe Legislature is presumed to know the existing law when it enacts a statute .... ”). However, despite the clear intention that the Wrongful Death Act allow for the recovery of consortium damages after the decedent’s death, nothing in the statute abrogates the common law marriage before injury rule. Therefore, because the legislature did not explicitly and clearly overrule the common law limitation on loss of consortium when enacting the Wrongful Death Act, the common law marriage before injury rule was incorporated into the Act. See Dep’t of Rev. ex rel. Soto v. Soto, 28 So.3d 171, 172 (Fla. 1st DCA 2010) (holding that Florida’s child support statute should be read in light of settled common law precedents limiting the type of gifts that can be credited against retroactive child support obligations).
Further, there appears to be no reason why the common law requirement—that the injured spouse and the surviving spouse be married prior to the date of injury—cannot coexist with the Wrongful Death Act. Nothing in the Wrongful Death Act is “so repugnant to the common law that the two cannot coexist.” Thomber, 568 So.2d at 918. The common law rule merely limits the circumstances for when the surviving spouse may recover “consortium-type” damages under the wrongful death statute for the “decedent’s companionship and protection and for mental pain and suffering from the date of injury.” § 768.21(2), Fla. Stat. (2015).
Additionally, we note that the plain language of the Wrongful Death Act indicates that the legislature did not intend for a surviving spouse to recover consortium damages if the surviving spouse was not married to the decedent prior to the date of the decedent’s injury. The definition of “survivor” in the statute is limited to familial relationships only, and both subsections (1) and (2) of section 768.21 clearly provide that damages are recoverable from the date of “injury.” §§ 768.18(1), 768.21(1)-(2), Fla. Stat. (2015). Thus, the plain language of the statute indicates that the legislature anticipated that the surviving spouse would have been married to the decedent prior to the date of injury.
To read the statute to permit recovery of consortium damages where the injury occurs prior to marriage, as the dissent does, would allow for results not supported by the plain language of the statute. For example, two unmarried individuals could be living together and in a relationship where one individual is financially dependent upon the other. If one of them is injured and the two continued living under the same arrangement for several years, *346 then, under the dissent’s view, so long as the couple is married a day before the injured party dies, the newly wedded surviving spouse could recover damages from all of the way back to when the decedent was first injured. However, given that the legislative definition of “survivor” is limited to familial relationships only, the legislature plainly did not intend for the surviving spouse to be able to collect consortium damages that proceeded the marriage.
Finally, it would make no sense to allow a spouse to recover consortium damages under the Wrongful Death Act simply because his or her spouse has died when that same spouse would be prohibited from recovering the same damage under a loss of consortium claim had his or her spouse survived. We are required to interpret the Wrongful Death Act to avoid absurd results such as this. Allstate Ins. Co. v. Rush, 111 So.2d 1027, 1032 (Fla. 4th DCA 2000) (“In all, statutes must be construed as to avoid an unreasonable or absurd result.”).[1]
Since the common law applies to our inquiry, we are next asked to not apply the marriage before injury rule in cases where the injury is a “latent injury” that does not reveal itself until after the parties many. Appellant argues there would be no risk, or at least a diminished risk, of a spouse “marrying into a cause of action.” Thus, appellant contends we should not apply the marriage before injury rule because one of the reasons for the rule is not present.
In Fullerton v. Hospital Corporation of America, 660 So.2d 389, 390 (Fla. 5th DCA 1995),
Fullerton’s cause of action arose as the result of his wife’s exposure to radiation when she was a student trainee studying radiation technology at the hospital. Fullerton married his wife several years after she was exposed to radiation. They did not realize that she was injured until three years after they had married when she developed cancer of the thyroid and had to have her thyroid removed.
The wife argued that the court should set aside the marriage before injury rule. However, the court concluded that “[i]n the absence of any statutory law on this point, Florida courts are required to follow the common-law rule.” Id. at 391. The court therefore held the wife could not recover. See also § 2.01, Fla. Stat. (2015) (“The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the 4th day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the Constitution and laws of the United States and the acts of the Legislature of this state.”).
Like in Fullerton, appellant asks us to set aside the common law marriage before injury rule. However, we, like the court in Fullerton, “are required to follow the common-law rule” until the legislature passes a statute superseding this common law requirement. 660 So.2d at 391. Thus, we also affirm the trial court on this issue.[2]
*347 In conclusion, we affirm the trial court and hold that the Florida Wrongful Death Act does not clearly or explicitly abrogate or overturn the common law requirement that the decedent and surviving spouse be married prior to the date of injury to recover consortium damages.[3] Although there may be persuasive policy reasons for superseding this common law rule, especially in the present case where the injury is latent, such a change may come only from the legislature by statutory enactment.

Affirmed.

Conner, J., concurs.
Taylor, J., dissents with opinion.

. Although the dissent claims that the opinion of this court is the only one of its kind in the United States, we must emphasize that exceedingly few courts have ever even considered this issue and none have interpreted Florida's Wrongful Death Act or Florida's common law specifically. See Wade R. Ha-beeb, Right of spouse to maintain action for wrongful death as affected by fact that injury resulting in death occurred before marriage, 69 A.L.R.3d 1046 (2011 update) (noting that there is "little authority” for the proposition that a wrongful death statute abrogates the marriage before injury rule).

. Additionally, we note that other jurisdictions have prohibited a loss of consortium claim from proceeding in so-called "latent injury” cases. See, e.g., Anderson v. Eli Lilly & Co., 79 N.Y.2d 797, S80 N.Y.S.2d 168, 588 *347 N.E.2d 66, 67-68 (1991); Doe v. Cherwitz, 518 N.W.2d 362, 362 (Iowa 1994); Gross v. Sauer, No. 37 83 58, 1992 WL 205277, *2 (Conn. Super. Ct. Aug. 14, 1992).

. We do not express any comment regarding other damages recoverable under the Wrongful Death Act such as recovery for medical and funeral expenses and other damages recoverable by an estate’s personal representative. See § 768.21(3)-(6), Fla. Stat.