# Supreme Court of Florida

————

No. SC2022-0597

————

**JENNIFER RIPPLE, etc.,**
Petitioner,

vs.

**CBS CORPORATION, et al.,**
Respondents.

May 9, 2024

PER CURIAM.

We have for review the decision of the Fourth District Court of Appeal in *Ripple v. CBS Corp.*, 337 So. 3d 45 (Fla. 4th DCA 2022). In *Ripple*, the Fourth District affirmed the trial court's ruling on Jennifer Ripple's claim for damages under section 768.21(2) of the Florida Wrongful Death Act (the Act). *Id.* at 59.[1] That provision allows a "surviving spouse" to recover "for loss of the decedent's companionship and protection and for mental pain and suffering

---

1. The Act is codified at sections 768.16-768.26, Florida Statutes (2015).

from the date of injury." The district court held that a spouse who married the decedent after the onset of the injury that caused the decedent's death cannot recover damages as a "surviving spouse" under section 768.21(2). *Id.* at 58. *Ripple* expressly and directly conflicts with a decision of another district court, *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212, 221 (Fla. 5th DCA 2018), where the Fifth District Court of Appeal held that a spouse who married the decedent after the injury *can* recover damages as a "surviving spouse" under section 768.21(2). We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.[2]

For the reasons discussed below, we agree with the Fifth District and hold that a spouse who married the decedent after the injury can recover damages as a "surviving spouse" under section 768.21(2). We reject Respondents' argument that, in these circumstances, the common law "marriage before injury" rule bars recovery under section 768.21(2). Consequently, we approve the

---

2. Our jurisdiction is based on article V, section 3(b)(3), rather than article V, section 3(b)(4), because the Fourth District did not certify the decision below to be in direct conflict with a decision of another district court or of this Court. *See* art. V, § 3(b)(4), Fla. Const.; *Ripple*, 337 So. 3d at 60.

holding in *Domino's* and quash *Ripple* to the extent that it holds otherwise. In the present case, we hold that Jennifer Ripple can recover as a "surviving spouse" under section 768.21(2). We do not reach Ripple's alternative argument regarding the claim of the decedent's adult children for damages under section 768.21(3) of the Act.

## FACTS AND PROCEDURAL HISTORY

Before his death, Richard Counter filed a personal injury complaint against multiple defendants (Defendants). Counter alleged common law negligence and strict liability actions and claimed that Defendants exposed him to asbestos from the 1950s through the 1990s. The pertinent timeline of events leading up to his death is as follows:

> On May 22, 2015, the decedent was diagnosed with mesothelioma. Less than two months later, on July 4, 2015, the decedent married the woman with whom he had lived for decades . . . . On July 23, 2015, the decedent filed his original personal injury complaint. . . .
> Less than four months later, on November 1, 2015, the decedent died from mesothelioma.

*Ripple*, 337 So. 3d at 48.

The woman he married was Jennifer Ripple, Petitioner. Counter's relatives included Ripple and two adult children from a previous marriage.

Ripple, as personal representative of Counter's estate, amended the personal injury complaint, thereby replacing Counter's common law personal injury claims with the estate's wrongful death claims for damages under the Act. The estate sought damages for Ripple under section 768.21(2), which provides that "[t]he surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury." The estate sought alternative damages for the adult children under section 768.21(3), which provides that "[m]inor children of the decedent, and all children of the decedent if there is no surviving spouse, may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury."

Defendants—Respondents here—moved for judgment on the pleadings as to both Ripple's damages claim and the adult children's alternative damages claim. Defendants argued that Ripple could not recover damages under section 768.21(2) because

she was not married to Counter at the time of his alleged asbestos exposure.[3] Defendants based their argument on Florida's common law rule that "a party must have been legally married to the injured person at the time of the injury in order to assert a claim for loss of consortium." *Id.* at 49-50 (quoting Defs.' Mot. for Partial J. on the Pleadings (first quoting *Fullerton v. Hosp. Corp. of Am.*, 660 So. 2d 389, 390 (Fla. 5th DCA 1995) (citing *Tremblay v. Carter*, 390 So. 2d 816, 817 (Fla. 2d DCA 1980)); and then citing *Kelly v. Georgia-Pacific, LLC*, 211 So. 3d 340 (Fla. 4th DCA 2017))). Defendants also argued that the rationale for this common law rule is that "a person may not marry into a cause of action and that a line must be drawn somewhere as to liability." *Id.* at 50 (quoting Defs.' Mot. for Partial J. on the Pleadings (citing *Fullerton v. Hosp. Corp. of Am.*, 660 So. 2d 389, 390 (Fla. 5th DCA 1995), and *Kelly v. Georgia-Pacific, LLC*, 211 So. 3d 340 (Fla. 4th DCA 2017))).

---

3. We have noted that in asbestos personal injury litigation, the injury is the asbestos exposure. *See Am. Optical Corp. v. Spiewak,* 73 So. 3d 120, 128-29 (Fla. 2011) (stating that the "actual injury" is inhalation of asbestos fibers that become "embedded in the lungs of the plaintiffs without their knowledge or consent").

Defendants further argued that Counter's adult children could not recover under section 768.21(3) because Ripple qualified as a "surviving spouse" under that subsection.

In its response, the estate argued that in *Kelly v. Georgia-Pacific, LLC*, 211 So. 3d 340 (Fla. 4th DCA 2017), the Fourth District erroneously held that a spouse who married the decedent after the decedent's injury cannot recover damages under section 768.21(2). The estate argued that the trial court should deny Defendants' motion for judgment on the pleadings under the Fifth District's decision in *Domino's*, which held that a spouse who married the decedent after the injury can recover damages under section 768.21(2). The estate noted that the Fifth District "adopted the 'common and ordinary' meaning of the term 'surviving spouse.' " *Ripple*, 337 So. 3d at 50 (quoting Pl.'s Resp. to Defs.' Mot. for Partial J. on the Pleadings (citing *Domino's*, 248 So. 3d at 219)). The estate explained that the Fifth District defined the term as " 'a married person who outlives his or her husband or wife,' irrespective of whether the marriage commenced before or after the decedent[]'s exposure to asbestos." *Id.* (quoting Pl.'s Resp. to Defs.' Mot. for Partial J. on the Pleadings (citing *Domino's*, 248 So. 3d at 219)).

The estate alternatively requested that if the trial court followed *Kelly* instead of *Domino's*, it deny Defendants' motion as to Counter's adult children. The estate argued that Defendants employed an "irreconcilable contradiction" by asserting that Ripple was not a "surviving spouse" under section 768.21(2) but that she was such a spouse under section 768.21(3). *Id.*[4]

The trial court granted Defendants' motion for judgment on the pleadings as to Ripple's damages claim but denied the motion as to the adult children's claim. In its written order, the trial court cited *Kelly* for its ruling on Ripple's claim but provided no reasoning for its ruling on the adult children's claim.

Defendants later moved for summary judgment as to the adult children's claim. Defendants argued that under the Act, adult children of the decedent may only recover damages under section 768.21(3) if there is no surviving spouse. Defendants claimed it was undisputed that Ripple was Counter's "surviving spouse."

---

4. Respondents never expressly argued that Ripple is not a "surviving spouse" under section 768.21(2), but the district court viewed them as essentially having made that argument. *See Ripple*, 337 So. 3d at 58.

The estate claimed in response that Defendants were extending *Kelly*'s poor reasoning. The estate argued that *Kelly* is "contrary to established precedent," "contrary to the legislative intent," and "unconvincing." *Id.* at 51 (quoting Pl.'s Resp. to Defs.' Mot. for Partial Summ. J. (citing *Domino's*, 248 So. 3d at 220-21 ("It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16-768.26 are remedial and shall be liberally construed." (citing § 768.17, Fla. Stat.)))).

The trial court granted Defendants' motion for summary judgment. In its written order, the trial court concluded that "as there is a surviving spouse, albeit a spouse who is herself barred from recovery pursuant to *Kelly*, an adult child is barred from recovery pursuant to the plain language of section 768.21(3) of the Wrongful Death Act." *Id.* at 52. The trial court recognized the estate's argument that Defendants' interpretation of section 768.21(3) would "completely cut off recovery under the Wrongful Death statute for the decedent's family, other than for funeral expenses," which "would 'turn back the legal clock to a time when a tortfeasor could delay justice until the injured person died and

- 8 -

thereby avoid all liability for their wrongdoing.' " *Id.* at 51-52.

However, the trial court concluded that it was bound by *Kelly* and

the Act's plain language.

The estate then voluntarily dismissed without prejudice its

remaining claims. The estate asked the trial court to enter final

judgment in Defendants' favor. After the trial court did so, the

estate appealed both the order granting Defendants' motion for

judgment on the pleadings and the order granting Defendants'

motion for summary judgment to the Fourth District.

The Fourth District affirmed the order granting Defendants'

motion for judgment on the pleadings as to Ripple's section

768.21(2) damages claim. However, it reversed the order granting

Defendants' motion for summary judgment as to the adult

children's section 768.21(3) damages claim.[5]

Refusing to recede from *Kelly*, the district court concluded that

Ripple could not recover damages as a "surviving spouse" under

---

5. On the adult children's claim, the district court concluded that if Ripple was not a "surviving spouse" under section 768.21(2), the adult children could recover damages under section 768.21(3). We do not reach this issue because we conclude that a spouse who married the decedent after the injury is a "surviving spouse" who is not precluded from recovering damages under section 768.21(2).

section 768.21(2). The district court quoted lengthy sections from *Kelly* and from *Domino's* to contrast the analyses in those opinions. Additionally, citing *Thornber v. City of Fort Walton Beach*, 568 So. 2d 914 (Fla. 1990), the district court observed that in *Domino's*, the Fifth District did not conduct a *Thornber* analysis. In *Thornber*, we stated that "[u]nless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law." *Ripple*, 337 So. 3d at 53 (alteration in original) (citing *Thornber*, 568 So. 2d at 918).

Because it did conduct a *Thornber* analysis in *Kelly*, the Fourth District concluded that its reasoning in *Kelly* was more sound than the Fifth District's in *Domino's*. The district court thus applied *Kelly*, in which it determined that the Act does not explicitly change the "marriage before injury" common law rule and held that the spouse therefore could not recover damages under section 768.21(2). The Fourth District also noted that *Domino's* permits the "absurd result" of "allow[ing] a spouse to recover consortium damages under the Wrongful Death Act simply because his or her spouse has died when that same spouse would be prohibited from

- 10 -

recovering the same damage under a loss of consortium claim had his or her spouse survived." *Id.* at 57-58 (citing *Kelly*, 211 So. 3d at 346).

The district court further noted that the trial court erred in concluding that Ripple was Counter's "surviving spouse, albeit a spouse who is herself barred from recovery pursuant to *Kelly*." *Id.* at 58. Concluding that Defendants sought to rewrite section 768.21 by adding the words "albeit a spouse who is [] barred from recovery pursuant to *Kelly*," the district court reversed the summary judgment order involving the claim of the decedent's adult children. *Id.* at 59.[6]

Our review follows.

## ANALYSIS

This case presents a question of statutory interpretation, which we review de novo. *Levy v. Levy*, 326 So. 3d 678, 681 (Fla.

---

6. The special concurrence elaborated that although *Kelly* was correctly decided, it was an "unfortunate factual application" of the common law "marriage before injury" rule. *Ripple*, 337 So. 3d at 60 (Gerber, J., concurring specially). Because the injury in *Kelly* was latent, the special concurrence observed that "nothing within *Kelly*'s facts would suggest that the decedent's wife, nearly forty years earlier, had 'married into a cause of action.'" *Id.* at 61.

2021). At the threshold, we must determine whether a spouse who married the decedent after the onset of the injury that caused the decedent's death is a "surviving spouse" under section 768.21(2) of the Act. We hold that such a spouse is a "surviving spouse" under that provision. And, as we explain later, we further hold that the common law "marriage before injury" rule does not bar recovery under 768.21(2) by a surviving spouse who married the decedent after the date of injury.

Our analysis of course begins with the text. Section 768.21(2) states: "The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury." § 768.21(2), Fla. Stat. The plain language of section 768.21(2) indicates that a spouse who married the decedent after the onset of the injury that caused the decedent's death is a "surviving spouse" under that subsection. Because the Act does not define the term "surviving spouse," we accord the phrase its ordinary meaning while giving regard to the context in which the phrase is used. *Barnett v. Dep't of Fin. Servs.*, 303 So. 3d

- 12 -

508, 513 (Fla. 2020).[7] We recently clarified that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Thus, we use " 'all the textual and structural clues' that bear on the meaning of a disputed text." *Id.* (citing *Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022)).

We typically turn to dictionaries to determine ordinary meaning. *Id.* at 599. The ordinary meaning of "spouse" is a person lawfully married to someone else. *See Spouse*, *Black's Law Dictionary* (11th ed. 2019). We face, then, the remaining question: When is a spouse a "*surviving* spouse"? In other words, does the ordinary meaning of the word "survivor" tell us whether survivorship under section 768.21(2) is determined at the time of the decedent's injury or at the time of the decedent's death?

---

7. The Act defines "[s]urvivors" as including "the decedent's spouse." *See* § 768.18, Fla. Stat.

We conclude that a "surviving spouse" under section 768.21(2) is a spouse at the time of the decedent's death because the ordinary meaning of "surviving spouse" is a spouse who outlives the other spouse. In 1972, when the Legislature established the new Florida Wrongful Death Act, *Martin v. United Sec. Servs., Inc.*, 314 So. 2d 765, 766-67 n.1 (Fla. 1975) (citing ch. 72-35, Laws of Fla.),[8] *Black's Law Dictionary* defined "survivor" as "[o]ne who survives another; one who outlives another; one who lives beyond some happening; one of two or more persons who lives after the death of the other or others." *Survivor*, *Black's Law Dictionary* (4th rev. ed. 1968). Also, the current version of *Black's Law Dictionary* defines "surviving spouse" as "[a] spouse who outlives the other spouse." *Surviving spouse*, *Black's Law Dictionary* (11th ed. 2019).

Thus, survivorship under section 768.21(2) is determined at the time of the decedent's death, which is the time when the spouse outlives the decedent. A spouse who outlives the decedent is a "surviving spouse" under section 768.21(2) who may recover damages under that provision. Moreover, the "from the date of

---

8. The Act merged the survival cause of action for personal injuries and the wrongful death cause of action. *Id.* at 768.

- 14 -

injury" language in section 768.21(2) cannot reasonably be read to contradict this ordinary meaning. § 768.21(2), Fla. Stat.; *see Kelly*, 211 So. 3d at 349 (Taylor, J., dissenting) (observing that the "from the date of injury" language "does not provide a limitation as to *who* may recover, but rather indicates *what* a surviving spouse may recover").

We need not go further in our interpretation of the term "surviving spouse" in section 768.21(2). However, we note that our conclusion is supported by the surrounding subsections in section 768.21, which have the same grammatical structure; by section 768.17, which shows the Legislature's intent for the Act "to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer"; and, as explained below, by the rule that claims under the Act accrue upon the decedent's death. *See Sheffield v. R.J. Reynolds Tobacco Co.*, 329 So. 3d 114, 120 (Fla. 2021).

Respondents argue that, even if Ripple is the decedent's surviving spouse under section 768.21(2), the common law "marriage before injury" rule bars her recovery. They note that the text of the Act, at section 768.20, allows defendants to maintain

defenses against individual survivors. And Respondents say that basic principles of statutory interpretation require us to read the Act against a common law background and to preserve common law rules that are not repudiated by or inconsistent with the text of the statute. In support of the latter argument, Respondents rely heavily on our decision in *Thornber*.

We do not dispute the importance of reading statutes with an awareness of and sensitivity to background common law rules. Depending on the circumstances, such rules might retain independent force as a supplement to statutory provisions, as was the case in *Thornber*. Common law rules might also inform the correct interpretation and application of statutory provisions themselves. Here, though, we do not think that the common law "marriage before injury" rule bars Ripple from recovering damages under section 768.21(2).

As our Court has previously recognized, a wrongful death claim is not a continuation of a common law personal injury claim. *Sheffield*, 329 So. 3d at 120. The wrongful death cause of action accrues once the decedent dies from the injury; at that moment, both the common law personal injury claim and a spouse's

- 16 -

derivative common law loss of consortium claim abate. *Id.* (citing

§ 768.20, Fla. Stat.); *see ACandS, Inc. v. Redd,* 703 So. 2d 492, 495

(Fla. 3d DCA 1997). The decedent's death gives rise to an

independent cause of action under the Act. *Sheffield,* 329 So. 3d at

121.

Thus, under the Act, the surviving spouse does not pursue a

distinct cause of action based on loss of consortium. Instead, the

Act contemplates a standalone wrongful death claim in which,

under section 768.21(2), the surviving spouse may recover damages

"for loss of the decedent's companionship and protection and for

mental pain and suffering from the date of injury." It is not clear

that the "marriage before injury" rule, a common law defense to a

*cause of action* based on loss of consortium, can also serve to

eliminate an element of statutory *damages*.

More broadly, we note that Florida's modern Wrongful Death

Act, enacted in 1972, effectuated a complex merger of two

previously existing causes of action: a statutory wrongful death

action focused on compensating survivors, and a survival action

focused on compensating the decedent (through his or her estate).

*See generally Martin,* 314 So. 2d at 767-68 (explaining the pre-1972

legal landscape and the Act's origin in a report of the Florida Law Revision Commission). In merging the causes of action, the Legislature eliminated some previously allowable damages and authorized new ones: "The claim for pain and suffering of the decedent from the date of injury to the decedent was eliminated. Substituted therefor was a claim for pain and suffering of close relatives, the clear purpose being that any recovery should be for the living and not for the dead." *Id.* at 769. This of course explains section 768.21(2), which includes a surviving spouse's damages for "mental pain and suffering" calculated from the date of the decedent's initial injury. Allowing the "marriage before injury" rule as a defense to a surviving spouse's recovery of damages under section 768.21(2) thus risks upsetting the Act's logic and underlying structure.

We acknowledge Respondents' argument that our failure to recognize a "marriage before injury" defense in these circumstances creates a partial anomaly. Because Ripple was not married to the decedent at the time of injury, she could not have pursued a common law action for loss of consortium if the decedent had survived the injury. Yet, because of the decedent's death from that

- 18 -

same injury, part of Ripple's recovery under section 768.21(2) might include damages for "loss of the decedent's companionship and protection" from the date of injury—including, arguably, the same damages that would have been unavailable to Ripple if the decedent had survived. We think it is up to the Legislature, not the courts, to decide whether this is a problem that needs fixing and, if so, how.

Finally, we note that as the finder of fact, a jury may, in considering the evidence, determine whether a spouse's conduct amounts to an attempt to marry into a section 768.21(2) claim. Nothing in our decision today prevents juries from considering the timing and duration of a couple's marriage when evaluating a claim for damages under section 768.21(2). Our legal system entrusts the jury with evaluating the evidence to determine a proper award under section 768.21(2). *See Philip Morris USA, Inc. v. Rintoul*, 342 So. 3d 656, 676 n.6 (Fla. 4th DCA 2022) (Warner, J., concurring in part and dissenting in part) (stating that the jury "would certainly take into consideration the length of the marriage"); *Peterson v. Sun State Int'l Trucks, LLC*, 56 So. 3d 840, 842 (Fla. 2d DCA 2011) (explaining that "[w]hen a jury finds that one spouse has sustained injuries as a result of the negligence of a third party, an award of

- 19 -

damages to the other spouse for loss of consortium is not automatic" and that "in order to prevail on a claim for loss of consortium, the claiming spouse must present competent testimony concerning the impact that the incident has had on the marital relationship").

We therefore hold that Ripple is a "surviving spouse" under section 768.21(2). As explained above, a "surviving spouse" is a spouse who outlives the other spouse. Here, Ripple legally married Counter on July 4, 2015, and Counter died on November 1, 2015. Ripple was Counter's spouse at the time of his death. Because she outlived her husband, Ripple is a "surviving spouse" under section 768.21(2) as a matter of law. Moreover, we further hold that the "marriage before injury" rule does not bar Ripple's recovery of damages under section 768.21(2).

## CONCLUSION

For these reasons, we approve the holding in *Domino's* that a spouse who married the decedent after the onset of the injury that caused the decedent's death can recover damages as a "surviving spouse" under section 768.21(2). We quash *Ripple* to the extent

that it holds otherwise and remand for proceedings consistent with this opinion.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

Fourth District - Case No. 4D2020-1939

(Broward County)

Mathew D. Gutierrez of The Ferraro Law Firm, P.A., Miami, Florida,

for Petitioner

Matthew J. Conigliaro of Carlton Fields, P.A., Tampa, Florida,

for Respondents

Daniel B. Rogers of Shook, Hardy & Bacon, L.L.P., Miami, Florida,

for Amicus Curiae The Coalition for Litigation Justice, Inc.