671 So.2d 301 (1996)
Scott SUTTON, Appellant/Cross-Appellee,
v.
Michael ASHCRAFT, Appellee/Cross-Appellant.
No. 95-942.
District Court of Appeal of Florida, Fifth District.
April 12, 1996.
Scott A. Turner, of Beers, Jack, Tudhope & Wyatt, P.A., Maitland, for Appellant/Cross-Appellee.
Charles M. Rand, of Miller and Rand, P.A., Longwood, for Appellee/Cross-Appellant.
*302 GRIFFIN, Judge.
Appellant, Scott Sutton ["Sutton"], appeals the amount of a final judgment in favor of appellee, Michael Ashcraft ["Ashcraft"], in a negligence case.[1] Sutton complains of the lower court's refusal to set off from the verdict as collateral sources one hundred percent of the amount of medical bills paid on Ashcraft's behalf by his health insurer, Prudential Insurance Company, in the amount of $13,682.46, and the payment made by Allstate under the "med pay" provision of its liability coverage in the amount of $1,000.
Following trial, the jury returned a verdict in favor of Ashcraft in the amount of $25,000. Ashcraft was awarded damages of $6,800 for pain and suffering, mental anguish and loss of capacity for the enjoyment of life and damages of $18,200 for medical expenses and lost earnings in the past. Finding each of the parties to be negligent, the jury attributed 70% negligence to Sutton and 30% negligence to Ashcraft.
Prior to trial, Sutton (or his insurance carrier) apparently paid Prudential a sum of money[2] to relinquish all its rights to reimbursement or subrogation of medical expenses incurred by Ashcraft and paid by Prudential. This sum totaled $13,682.46. In the words of Sutton's counsel: "We bought the lien."[3] Sutton's position is that Prudential has by its action turned a collateral source that was not subject to full setoff into one that is. Sutton's argument, which reveals yet another quirk of our oft-amended negligence statute, is ingenious and is not without statutory support, but we agree with the lower court that it cannot prevail.
When Ashcraft disputed the amount of collateral source setoff claimed by Sutton, the lower court conducted a hearing on the matter and entered a net final judgment in favor of Ashcraft in the amount of $12,444.27. The court's calculation was as follows:

$13,682.46 Prudential payments
- 30% Comparative Negligence
__________
$ 9,577.72
- 40% Attorney's Fees
__________
$ 5,746.63
- 324.40 Costs (total costs $959.23 - taxable
__________
$ 5,422.23 costs $366.50 = $592.73
 $13,682.46 divided by $25,000.00
 (amount of verdict) = 55%
 55% × $592.73 = $324.40
$17,500.00
- 5,422.23
__________
$12,077.77

We conclude this calculation was correct.
Three subsections of § 768.76 are arguably relevant to this issue:
768.76 Collateral sources of indemnity.
(1) In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to him, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists.
* * * * * *
(4) A provider of collateral sources that has a right of subrogation or reimbursement that has complied with this section shall have a right of reimbursement from a claimant to whom it has provided collateral sources if such claimant has recovered all or part of such collateral sources from a tortfeasor. Such provider's right of reimbursement shall be limited to the actual amount of collateral sources recovered by the claimant from a tortfeasor, minus its *303 pro rata share of costs and attorney's fees incurred by the claimant in recovering such collateral sources from the tortfeasor. In determining the provider's pro rata share of those costs and attorney's fees, the provider shall have deducted from its recovery a percentage amount equal to the percentage of the judgment or settlement which is for costs and attorney's fees.
* * * * * *
(8) Reimbursement of a collateral sources provider pursuant to this section shall satisfy such collateral sources provider's right of subrogation or reimbursement. The provider shall have no right of subrogation or reimbursement for collateral sources payments made after the date of waiver, settlement, or judgment.
§ 768.76, Fla.Stat. (1993).
Basically, what Sutton urges is that, although a health insurer like Prudential is usually entitled to a right of subrogation or reimbursement whose recovery is calculated pursuant to subsection (4), in a case where that right of subrogation or reimbursement has been "removed" (and here we struggle for the correct verb to describe what has occurred) from the provider, subsection (1), which requires a dollar for dollar setoff, becomes the controlling provision. Sutton argues that his position is reinforced by the language of subsection (8) of section 768.76, but we question whether this provision is applicable. That provision, by its terms, speaks of "reimbursement," which implies repayment by the person who received the benefit. Even if it were relevant, the provision does not apply to this cause of action, which arose before the effective date of subsection (8). Ch. 93-245, § 4, at 1892, Laws of Fla.
We are uncertain exactly what does fall within the purview of subsection (1) since most payments of the sort referred to automatically give rise to a right of subrogation under Florida law. Blue Cross and Blue Shield of Florida, Inc. v. Matthews, 498 So.2d 421, 422 (Fla.1986). Subsection (4) is designed to control these subrogation claims. It limits the right of reimbursement to the amount actually recovered by the plaintiff from the tortfeasor (in this case 70%), less an allowance for the plaintiff's attorney's fees in obtaining a judgment for medical expenses. The above-described calculation performed by the lower court is consistent with subsection (4). To burden a recovering plaintiff with a 100% setoff and no allowance for fees based on the action of the defendant in "buying off" the right of reimbursement or subrogation is not a logical way of viewing the entire statutory scheme. The statute contemplates that collateral sources which are of the sort that give rise to a right of reimbursement or subrogation should not be charged against the plaintiff except to the extent they are recovered by him.
The answer to this problem may be found by examining the setoff provision in section 768.76(1). That subsection provides that "there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists. "§ 768.76(1), Fla. Stat. (1993) (emphasis added). The waiver or relinquishment of such rights does not destroy their character. As Judge Booth explained in Bruner v. Caterpillar, Inc., 627 So.2d 46 (Fla. 1st DCA 1993), it is the existence of such rights, not their exercise, which denies a tortfeasor the statutory right to a collateral source reduction. Id. at 47 (Booth, J., concurring). If in Bruner a plaintiff could not be burdened by a subrogee's negotiated agreement with the plaintiff not to pursue subrogation, a plaintiff could not logically be burdened by the tortfeasor's negotiated agreement with the subrogee done without the plaintiff's knowledge or consent. In this case, by paying Prudential to relinquish its subrogation rights, Sutton (or his carrier) stepped into Prudential's shoes. It did not buy a different pair of shoes, nor could it turn Prudential's shoes into a different type of footwear. Here, the kind of shoes they bought was "a collateral source for which a right of subrogation or reimbursement exists." When Prudential's right sprang into being, it was a common law right of subrogation subject to a specific statutory mechanism for perfection and recoupment. By the statute, it is a right burdened by the requirement that the plaintiff actually recover a judgment for those sums from the tortfeasor *304 and by the obligation to pay an allocation of fees for obtaining the judgment.
As to the collateral source reduction for the med pay, it appears this is not within the definition of a collateral source as defined in 768.76(2)(a). See Pensacola Jr. College v. Montgomery, 539 So.2d 1153, 1156 n. 3 (Fla. 1st DCA 1989).
AFFIRMED.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] Ashcraft has cross-appealed the lower court's refusal to grant his motion for directed verdict on the issue of comparative negligence, but there was evidence from which the jury could find the defendant negligent and we, accordingly, find no error.
[2] Though not a part of the record, it appears to be undisputed that the amount paid to Prudential was $6,000.
[3] The filed document executed by Prudential is denominated a "satisfaction." The body of the document speaks of relinquishing its reimbursement and subrogation rights.