698 So.2d 865 (1997)
Gerald F. HORTON, M.D., and Raymond E. Silbar, M.D., Appellants,
v.
Constance M. CHANNING and Wesley Channing, individually and as parents and next of friend of Michelle C. Channing, a minor, Appellees.
Peter BREAM, M.D., and Drs. McClow, Clark & Berk, P.A., Appellants,
v.
Constance M. CHANNING and Wesley Channing, individually and as parents and next of friend of Michelle C. Channing, a minor, Appellees.
Gerald F. HORTON, M.D., Appellant,
v.
Constance M. CHANNING and Wesley Channing, individually and as parents and next of friend of Michelle C. Channing, a minor, Appellees.
Nos. 96-2271, 96-2293 and 96-3389.
District Court of Appeal of Florida, First District.
July 16, 1997.
Rehearing Denied August 15, 1997.
*866 Kimberly A. Ashby, Geoffrey D. Ringer, and Robert D. Henry of Maguire, Voorhis & Wells, P.A., Orlando, for appellants Gerald F. Horton, M.D., and Raymond S. Silbar, M.D.
Craig A. Dennis and Debra L. Foote of Dennis & Bowman, P.A., Tallahassee, for appellants Peter R. Bream, M.D., and Drs. McClow, Clark & Berk, P.A.
James T. Terrell of Brown, Terrell, Hogan, Ellis, McClamma & Yegelwel, P.A., Jacksonville; Michael J. Korn of Korn, Zehmer & Gellatly, P.A., Jacksonville, for appellees.
WOLF, Judge.
There are three timely appeals related to a wrongful death action based on medical malpractice. Appellants raise issues concerning the finding of liability, amount of damages, and the assessment of attorney's *867 fees. We find no reversible error as to those issues dealing with the doctors' liability, and affirm as to those issues without further comment except as to the issue related to the grief expert. We also find no error as to the failure to set off a previous settlement between appellees, their deceased daughter, and St. Vincent's Hospital where there was no demonstration that the damages which were previously collected represented the same damages returned by the jury in the instant case. See Safecare Health Corp. v. Rimer, 620 So.2d 161 (Fla.1993). We do, however, find that the trial court committed reversible error by not reducing the amount of economic damages where the appellees, the plaintiffs in this wrongful death action, failed to prove their entitlement to the economic damages pursuant to section 768.21(6)(b), Florida Statutes. The trial court additionally erred in failing to set off the economic damage award by the amount of comparative negligence of the plaintiffs. See Cody v. Kernaghan, 682 So.2d 1147 (Fla. 4th DCA 1996). We also determine that reversal is required as to the granting of attorney's fees pursuant to section 768.79, Florida Statutes, in light of our decisions requiring reduction of the economic damages.
This action originated as a personal injury action for medical malpractice against nine defendants. Summary judgment was entered in favor of one defendant, and another defendant was dismissed from the case; in addition, St. Vincent's, one of the original defendants, entered into a settlement agreement and release with the plaintiffs in which they agreed to pay $775,000 to the plaintiffs: $700,000 for Michelle Channing's personal injury claim, and $75,000 for the parents' personal injury claims. Following Michelle Channing's death in September 1995, the personal injury action was refiled as a wrongful death suit, naming Wesley and Constance Channing as the personal representatives of the estate of Michelle Channing. The wrongful death action alleged that Drs. Horton, Silbar, and Bream (including Dr. Bream's employer, Drs. McClow, Clark & Berk, P.A.) were each negligent for failing to timely diagnose and treat the Ewing's sarcoma that resulted in the death of Michelle Channing.[1]
The case proceeded to trial on the wrongful death action against Drs. Horton, Silbar and Bream. Appellees presented testimony regarding Michelle's medical expenses through the testimony of Mr. Channing, who had formulated a summary of alleged medical bills. In pretrial proceedings, appellants agreed to allow copies of the bills. Appellants objected to the lack of evidence regarding the reasonableness of the medical bills and appellees' ability to recover them under the wrongful death statute, arguing that the wrongful death statute does not provide for recovery of expenses by the estate or personal representative if those expenses were not charged against the estate or actually paid by the personal representative. Appellants argued that appellees did not pay the expenses claimed by them and that expenses were paid by insurance and governmental agencies whose claims for subrogation against the estate were time barred. Appellants' objections were overruled and the testimony regarding medical expenses was allowed.
During the plaintiffs' case, they presented the testimony of a grief expert who was allowed to testify over appellants' objections. Following the two-week trial, the jury returned a verdict finding Dr. Bream 40 percent liable, Dr. Horton 40 percent liable, Dr. Silbar 5 percent liable, Wesley Channing 7½ percent liable, and Constance Channing 7½ percent liable. The jury awarded the plaintiffs economic damages totaling $874,869.62, and noneconomic damages totaling $1,200,000.00 ($600,000 for each parent for past and future pain and suffering). The defendant/appellants moved for remittitur, judgment notwithstanding the verdict, new trial, and a set off of the monies paid by St. Vincent's in its earlier settlement. The motions for remittitur, JNOV and new trial were denied at hearing. The motion for set off was later denied after additional written argument was permitted.
*868 Based upon appellees' demand for judgment served pursuant to section 768.79, Florida Statutes, the trial court entered an order awarding appellees attorney's fees based upon its determination that the final judgment against Dr. Horton represented a judgment obtained of $480,000 in noneconomic damages and $874,869.62 in economic damages, for a total of $1,354,869.62. Pursuant to section 768.79, the trial court determined that the jury's verdict represented an award which was more than 25 percent greater than the appellees' demand for judgment of $1,000,000, and awarded appellees attorney's fees in the amount of $610,275. The final judgment on attorney's fees is being appealed here, as well as the final judgment on the jury verdict and the rulings on the posttrial motions.

Testimony of Grief Expert
Section 90.702, Florida Statutes, deals with admissibility of expert testimony:
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
It is well established that in construing that statute, a trial court has broad discretion in determining the subjects on which an expert may testify, keeping in mind the intent of the evidence code governing expert testimony, which is to admit testimony which will assist the trier of fact in understanding the evidence and in determining the issues. See, e.g., Angrand v. Key, 657 So.2d 1146, 1148-1149 (Fla.1995); Gulley v. Pierce, 625 So.2d 45, 50 (Fla. 1st DCA 1993), rev. denied, 637 So.2d 236 (Fla.1994). In Angrand, the supreme court ruled that the trial court erred in admitting the testimony of a pain and grief expert; however, it stated that in certain cases the trial court may exercise its discretion to admit such testimony from an expert who has treated the survivors and can provide specialized knowledge to assist the trier of fact in understanding the evidence:
Clearly, psychiatrists, psychologist, or other qualified physicians who have treated a survivor or reviewed records concerning a survivor's treatment for physical or mental sequelae related to mental pain and suffering caused by the death of a survivor's decedent may provide testimony which will assist the jury in understanding evidence and deciding damages issues. Further, we recognize that the experience, age, and other relevant information about the jurors or the facts in a particular case could provide a basis for the trial judge to conclude that Dr. Platt or a person with similar expertise, training, and education would assist the jury in understanding the evidence or in deciding the appropriate damages. These are factors to be considered by the trial judge in the exercise of his or her discretion.
Id. at 1148-1149.
In the instant case, Dr. Coppotelli, an expert, was actively involved in therapy with the Channing family. She did not merely testify about subjects which might have been within the ordinary experience of the jury, she provided specific information in regard to the Channing family. Thus, the expert testimony was admissible under section 90.702 as it was both specialized knowledge and significant information to assist the jury in understanding the evidence and evaluating the issue of damages here. Unlike Angrand, the expert testimony in this case was not merely offered as expert testimony in the area of grief and bereavement, but was specialized testimony from the plaintiffs' treating psychologist.

Economic Damages
Section 768.21, Fla. Stat., reads in pertinent part,
Damages shall be awarded as follows:
(5) Medical or funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid them.
(6) The decedent's personal representative may recover for the decedent's estate the following:
....

*869 (b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent, excluding amounts recoverable under subsection (5).
The appellant argues that the trial court reversibly erred by admitting the testimony of Wesley Channing as to the medical expenses which had been incurred. Mr. Channing testified that in his opinion $872,915.12 in medical expenses had been incurred due to the delay in diagnosis. There was no testimony that any of the medical expenses had been paid by the survivors or that the medical expenses incurred had been charged against the estate, as required by statute. In fact, the testimony of Mr. Channing in proffer was that neither he nor his wife paid any of the medical expenses, that he was not aware of any claims against the estate for medical expenses incurred, and that the only payments which had been made toward the medical bills incurred were made by Blue Cross/Blue Shield and Children's Medical Services in the total amount of $425,824.42. He further testified that Blue Cross and Blue Shield as well as Children's Medical Services had reached an agreement with the medical providers, and that neither the insurance companies nor the medical providers would be seeking any further reimbursement. No other economic damages were proven.
Appellees argue that they are entitled to collect the full $872,915.12 under the collateral source rule because the defendants are not entitled to the benefit of the bargain between the plaintiffs and the providers. Appellants argue that appellees are entitled to nothing because neither appellees nor the estate has incurred any obligation. We find both positions to be in error.
Prior to reaching the collateral source issue, a plaintiff in a wrongful death action must present evidence of damages pursuant to sections 768.21(5) and (6), Florida Statutes. We determine that the $425,824.42 paid by the insurance providers constituted medical expenses paid on behalf of the decedent. See Johnson v. Deangelo, 448 So.2d 581 (Fla. 5th DCA 1984). Therefore, the amount paid by the insurance providers does constitute damages as provided by section 768.21(6)(b). We also determine that appellants are not entitled to a collateral source reduction for these amounts under section 768.76, Florida Statutes. See Sutton v. Ashcraft, 671 So.2d 301 (Fla. 5th DCA 1996). Thus, the amount of economic damages awarded should be reduced to reflect the amounts paid by Blue Cross/Blue Shield and Children's Medical Services.
We, therefore, affirm the finding of liability, but reverse and remand as to the issues concerning economic damages as well as striking that portion of the judgment granting appellees' attorney's fees, and direct the trial court to enter a final judgment in accordance with this opinion.
JOANOS and VAN NORTWICK, JJ., concur.
NOTES
[1] The complaint also included a count of spoilation of evidence in regard to the misplaced x-ray, which was later stricken from the complaint.