IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

May 8, 2019

THOMAS SAMMONS and MADELINE )
SAMMONS, )
                            )
            Appellants, )
                            )
v. )         Case No.  2D17-755
                            )
ADAM GREENFIELD, D.O.; )
ASG DOCTORS, INC.; and FAMILY )
MEDICAL CENTER OF PORT RICHEY, )
INC., d/b/a FAMILY MEDICAL CENTERS, )
                            )
           Appellees. )
_____)

BY ORDER OF THE COURT:

Appellees' motion for rehearing and rehearing en banc is denied.  On the court's own motion, the prior opinion dated October 19, 2018, is withdrawn, and the attached opinion is issued in its place.  No further motions for rehearing will be entertained.

I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.

MARY ELIZABETH KUENZEL, CLERK

THOMAS SAMMONS and MADELINE
SAMMONS,

        Appellants,

v.

ADAM GREENFIELD, D.O.;
ASG DOCTORS, INC.; and FAMILY
MEDICAL CENTER OF PORT RICHEY,
INC., d/b/a FAMILY MEDICAL CENTERS,

        Appellees.

Case No. 2D17-755

Opinion filed May 8, 2019.

Appeal from the Circuit Court for Pasco
County; Declan Mansfield, Judge.

Thomas A. Burns of Burns, P.A., Tampa;
and Desiree E. Bannasch of Desiree E.
Bannasch, P.A., Orlando, for Appellants.

Bryan R. Snyder and Isaac R. Ruiz-Carus
of Rissman, Barrett, Hurt, Donahue,
McLain & Mangan, P.A., Tampa, for
Appellees.

KELLY, Judge.

        Thomas and Madeline Sammons appeal from the final judgment entered

against them after the trial court dismissed their lawsuit against the appellees, Adam

Greenfield, D.O.; ASG Doctors, Inc.; and Family Medical Center of Port Richey, Inc. We reverse.

Mr. Sammons passed away during the course of the litigation against the appellees. The Sammons' counsel filed a suggestion of death but did not serve a motion to substitute the personal representative of Mr. Sammons' estate within ninety days as required by Florida Rule of Civil Procedure 1.260(a)(1), nor did counsel seek an extension of time within which to do so. A week after the ninety-day period passed, the appellees moved to dismiss the Sammons' lawsuit with prejudice. At the hearing on the motion to dismiss, counsel for the Sammons presented the court with an affidavit detailing a health issue she had been experiencing and explaining how the condition was responsible for her failure to timely file the motion to substitute. After reviewing the affidavit and hearing argument, the trial court concluded counsel had not shown excusable neglect and granted the motion to dismiss with prejudice because the statute of limitations on the Sammons' claims had expired.

"The courts of this state have a long-standing tradition in favor of the disposition of an action on its merits." Tucker v. Firestone Tire & Rubber Co., 552 So. 2d 1178, 1179 (Fla. 2d DCA 1989) (citations omitted). Further, this court has recognized that rule 1.260 "has been liberally interpreted to permit substitution beyond the ninety-day time period." Id.; see also Mims ex. rel. Mims v. Am. Sr. Living of Dade City, FL, LLC, 36 So. 3d 935, 936 (Fla. 2d DCA 2010) (same). Moreover, we have explained that "all doubt should be resolved in favor of allowing trial upon the merits." Tucker, 552 So. 2d at 1179; see also Rogers v. First Nat'l Bank at Winter Park, 232 So. 2d 377, 378 (Fla. 1970) (explaining that courts should be liberal when determining

excusable neglect because "[w]hile our procedural rules provide for an orderly and expeditious administration of justice, we must take care to administer them in a manner conducive to the ends of justice").

With these principles in mind, we conclude that the Sammons' counsel made a sufficient showing of excusable neglect. See City of Ocala v. Heath, 518 So. 2d 325, 326 (Fla. 5th DCA 1987) (finding that counsel's illness combined with the effects of his medication made his neglect excusable).[1] Therefore, we reverse the judgment in favor of the appellees and remand for the trial court to vacate the order dismissing the Sammons' complaint and for further proceedings consistent with this opinion.

Reversed and remanded.

MORRIS, J., Concurs.
SILBERMAN, J., Dissents with opinion.

SILBERMAN, Judge, Dissenting.

I dissent. Simply put, the trial court considered all the information provided by the parties and determined that counsel for the Sammons' claim of excusable neglect was not credible. Because this finding is supported by the record, I cannot agree that the court abused its discretion in dismissing the action as to Mr. Sammons. As to Mrs. Sammons, however, her cause of action for loss of consortium

---

[1]The dissent seems to suggest that one can infer from our opinion that the trial court must take "counsel's assertions of excusable neglect at face value." Our opinion should not be read to suggest anything like that as we take no position on that issue one way or another, nor do we need to as the appellees have not contested counsel's assertions—they simply argue that what she asserted does not amount to excusable neglect. Our problem with the trial court's conclusion is that it was a non sequitur.

survived the dismissal of Mr. Sammons' claims.  Thus, I would affirm in part and reverse in part.

## I.  Background

Thomas and Madeline Sammons seek review of a final defense judgment in this action alleging medical malpractice in the treatment of Mr. Sammons.  The trial court dismissed the action based on the Sammons' failure to timely substitute a party plaintiff pursuant to Florida Rule of Civil Procedure 1.260(a)(1) after the suggestion of Mr. Sammons' death.

The Sammons filed the underlying action against Adam Greenfield, D.O.; ASG Doctors, Inc.; and Family Medical Center of Port Richey, Inc., d/b/a Family Medical Centers (together "Defendants"), alleging Dr. Greenfield failed to timely diagnose and treat redness and irritation in one of Mr. Sammons' toes.  Mr. Sammons sought damages against all three Defendants for negligence, and Mrs. Sammons sought damages for loss of consortium.

Mr. Sammons passed away from unrelated causes in March 2016, and the Sammons served a suggestion of death on April 20, 2016.  On July 25, 2016, Defendants filed a motion to dismiss for failure to substitute a party within ninety days of filing the suggestion of death in accordance with rule 1.260(a)(1).  According to the motion, the probate proceeding for Mr. Sammons' estate had been initiated and Mrs. Sammons had been appointed personal representative at least a month before the expiration of the ninety-day period.  The motion requested dismissal with prejudice because the applicable statute of limitations had expired.

- 4 -

The Sammons did not file a response to Defendants' motion to dismiss. Instead they filed an untimely motion to substitute Mrs. Sammons as personal representative of the Estate as the party plaintiff. The Sammons did not schedule that motion for hearing. At the hearing on the motion to dismiss in December 2016, the Sammons' counsel ("Counsel") requested that the court allow a late substitution based on her excusable neglect. Counsel offered an affidavit in support of this request that had not been provided to defense counsel or filed with the court. In her affidavit, Counsel asserted that she failed to timely substitute parties due to cognitive problems she claimed to be experiencing as a result of undiagnosed hypothyroidism. Counsel did not provide an affidavit from her physician, but she produced a doctor's note dated November 2016 which stated, "Due to this patient's medical illness which she had been unaware of she has been having cognitive changes. She is compliant with her treatment and will be under my care as well as possibly other specialist's care."

The court questioned Counsel for specific details regarding when and how she learned of her cognitive problems. Counsel asserted that she first learned of her cognitive problems in August 2016 when she consulted a physician about memory loss and word-finding difficulties she had been experiencing in the previous months. She was diagnosed with hypothyroidism and began taking medication in September 2016. The court was skeptical of Counsel's assertion that her medical condition prevented her from filing a timely motion to substitute. The court pointed out that Counsel had filed a notice of unavailability on September 7, 2016, in which she did not mention any medical conditions. Counsel said that she filed the notice of unavailability prior to attending a legal seminar in Wyoming for most of September. The court then suggested that, if

counsel could attend a legal seminar, she must have been capable of handling her cases as well. Counsel said that the problem with her condition was that the memory loss and brain fog she was experiencing were intermittent.

Defense counsel informed the court that he had communicated with Counsel about the motion to dismiss on August 9, 2016, via email. In the email, Counsel said that she was out of town and required more time to substitute parties. She claimed the delay was due to an error with the bond in the probate proceeding. She did not mention any health-related issues. In response to defense counsel's assertions, Counsel said she did not remember sending the email.

The court rejected Counsel's assertion that her medical condition prevented her from filing a timely motion to substitute. Based on the information before it, the court determined that Counsel was fully aware of the procedural posture of the case and that her failure to timely substitute was due to a bond issue. The court gave great weight to the fact that Counsel filed a notice of unavailability and communicated with defense counsel about the motion to dismiss without mentioning a medical problem. Thus, the court rejected Counsel's claim of excusable neglect.

The Sammons raise two issues on appeal. First, they assert that the court erred by determining as a matter of law that Counsel's failure to comply with rule 1.260(a)(1) did not constitute excusable neglect. Second, they argue that the trial court erred in dismissing Mrs. Sammons' loss of consortium claim because it survives the dismissal of Mr. Sammons' action for failure to timely substitute.

## II. Excusable Neglect

The court granted Defendants' motion to dismiss based on the Sammons' failure to comply with rule 1.260(a)(1), which provides, in pertinent part, as follows:

> (1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. . . . Unless the motion for substitution is made within 90 days after the death is suggested upon the record by service of a statement of the fact of the death in the manner provided for the service of the motion, the action shall be dismissed as to the deceased party.

"While the language of Rule 1.260 is mandatory, the statute has been interpreted liberally to allow substitution of a party after 90 days of the suggestion of death upon a showing of excusable neglect, inadvertence, mistake, fraud, etc." as provided for in Florida Rule of Civil Procedure 1.540(b)(1). Pearl v. Kelly, 442 So. 2d 1012, 1013 (Fla. 3d DCA 1983) (citations omitted); see also Mims ex rel. Mims v. Amer. Senior Living of Dade City, Fla., LLC, 36 So. 3d 935, 936 (Fla. 2d DCA 2010) ("Rule 1.260(a)(1) has been liberally interpreted to permit a substitution of parties beyond the ninety-day period set forth in the rule."). A party is also entitled to move for an extension of time in which to substitute parties if they have not been able to timely do so. Pearl, 442 So. 2d at 1013.

It is the movant's burden to establish excusable neglect for failing to take action in a case under rule 1.540(b). Bank of N.Y. Mellon v. P2D2, LLC, 100 So. 3d 205, 208 (Fla. 2d DCA 2012); Bowers v. Allez, 165 So. 3d 710, 711 (Fla. 4th DCA 2015). A finding of excusable neglect may be based upon a person's physical or mental infirmities. Paul v. Wells Fargo Bank, N.A., 68 So. 3d 979, 985 (Fla. 2d DCA 2011); Bowers, 165 So. 3d at 711-12. However, those infirmities must be the basis for the

movant's failure to take action in the case. Paul, 68 So. 3d at 984. We review a trial court's determination regarding excusable neglect for an abuse of discretion. De Vico v. Berkell, 976 So. 2d 646, 647 (Fla. 3d DCA 2008).

On appeal, the Sammons argue for the first time that the trial court erred by failing to conduct an evidentiary hearing to determine whether Counsel had established excusable neglect. However, at no point did Counsel suggest that an evidentiary hearing was necessary. Instead, Counsel freely responded to the court's inquiry into the specific details regarding when and how she learned of her cognitive problems. And Counsel argued that the facts before the court were sufficient to establish excusable neglect. Thus, the Sammons did not preserve and indeed waived any issue regarding their right to an evidentiary hearing. See Sciame v. Sciame, 215 So. 3d 190, 192 (Fla. 2d DCA 2017).

The Sammons alternatively argue that the trial court erred in granting the motion to dismiss because Counsel's affidavit alone was sufficient to establish excusable neglect. I cannot agree that a trial court must take counsel's assertions of excusable neglect at face value, particularly where information casting doubt on the assertions is before the court. As the majority notes, Counsel offered an affidavit in which she asserted that she failed to timely substitute parties due to memory lapses and brain fog she was experiencing as a result of undiagnosed hypothyroidism. Counsel further asserted that she had started noticing the memory lapses and difficulty with name recall in the months preceding August 2016. She was diagnosed with hypothyroidism and began taking medication in September 2016. Counsel did not provide an affidavit from her physician, but she provided a doctor's note dated

- 8 -

November 2016 vaguely stating, "Due to this patient's medical illness which she had been unaware of she has been having cognitive changes."

The court questioned Counsel regarding her memory lapses and brain fog. The court noted that Counsel failed to request an extension of time or indicate on the record at any time prior to the hearing that she had a medical problem. The court added that Counsel failed to mention any medical issue in the August 2016 email despite the email reflecting that Counsel was "fully aware of what's going on." Counsel also made no mention of a medical issue in her September 2016 notice of unavailability. Instead, Counsel indicated that she was going to Wyoming to attend a legal seminar. In determining that Counsel failed to meet her burden of establishing excusable neglect, it is evident that the court did not find Counsel to be credible. Because the record supports this determination, we must affirm. See Brivis Enters., v. Von Plinski, 8 So. 3d 1208, 1209 (Fla. 3d DCA 2009).

Indeed, the Fourth District has affirmed a finding of no excusable neglect under analogous circumstances. See Bowers, 165 So. 3d 710. In Bowers, the appellee obtained a default judgment based on the appellants' failure to file a timely answer to the complaint. Id. at 711. The appellants, Peter J. Bowers and Peter J. Bowers, P.A., moved to vacate the default judgment in accordance with rule 1.540(b) on the basis of excusable neglect. The appellants asserted that Bowers had medical issues, had to deal with medical issues involving his parents, and separated from his employment during the time the answer was required to be filed. Id. at 711. Bowers, who was also an attorney, asserted that "he had to prioritize servicing his other clients in their cases before handling matters in the instant case." Id.

In reviewing the trial court's denial of the motion to vacate, the Fourth District concluded that the appellants had not established excusable neglect. See id. at 712. The court reasoned as follows:

> Although Appellants allege medical issues with Bowers and his parents before and surrounding the time of service of the complaint, Appellants timely requested an extension because of these circumstances and subsequently obtained additional time to respond, stating that they could respond by November 12, 2013. However, they failed to do so and failed to request another extension of time. There were no allegations that Bowers' medical issues kept him hospitalized or incapable of communicating with the court at the time. In fact, per Appellants' motion, during this same time period, Bowers was prioritizing the cases of his clients and receiving continuances for their matters. Under the circumstances, Appellants' failure to timely file an answer or at least a request for another extension in a case where they were the defendants is not excusable, it is inexplicable.

Id.

In this case, as in Bowers, the party asserting excusable neglect (Counsel) was an attorney who claimed that medical issues kept her from filing a document in compliance with time limitations. As in Bowers, Counsel indicated knowledge of the deadline but failed to request an extension of time. Instead, as found by the trial court, Counsel was practicing law with no mention of any medical issues. As in Bowers, the trial court did not abuse its discretion in finding that Counsel's failure to comply with time limitations did not constitute excusable neglect.

The majority's reliance on City of Ocala v. Heath, 518 So. 2d 325 (Fla. 5th DCA 1987), is misplaced. While Heath's attorney filed an affidavit asserting that prior counsel had failed to timely file an amended complaint due to memory lapses and a limited ability to think clearly, there was no question regarding counsel's credibility. Id.

at 326. Here, while Counsel's affidavit alleged similar ailments, the additional information provided to the court by Counsel and Defendants' attorney led the court to determine that Counsel's assertions of memory lapses and a limited ability to think clearly were simply not credible. Under these circumstances, Heath is inapposite and does not support reversal.

## III. Mrs. Sammons' Loss of Consortium Claim

Defendants do not dispute that only Mr. Sammons' negligence claims are subject to dismissal for failure to comply with the ninety-day time limit for substitution. The issue in dispute is whether Mrs. Sammons' derivative cause of action for loss of consortium survives the dismissal of Mr. Sammons' claims pursuant to rule 1.260(a)(1).

No Florida cases address this exact issue. However, the Third District and the Fifth District have addressed and conflicted on the closely-related issue of whether a wife's cause of action for loss of consortium survives the abatement of her husband's personal injury action upon his death pursuant to section 768.20, Florida Statutes (1972).[2] The Sammons argue that the Fifth District's reasoning in Taylor v. Orlando Clinic, 555 So. 2d 876 (Fla. 5th DCA 1989), quashed in part on other grounds, Capone v. Philip Morris USA, Inc., 116 So. 3d 363 (Fla. 2013); and Randall v. Walt Disney World Co., 140 So. 3d 1118 (Fla. 5th DCA 2014), supports a holding that Mrs. Sammons' loss of consortium action survives the dismissal of Mr. Sammons' personal injury claims. Defendants argue that the Third District's reasoning in AC&S, Inc. v.

_____

[2]Section 768.20 provides, in pertinent part, "When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." There is no suggestion that Mr. Sammons' claims abated upon his death in this case because the Sammons concede that Mr. Sammons death was not caused by his personal injuries.

- 11 -

Redd, 703 So. 2d 492, 494 (Fla. 3d DCA 1997), supports the contrary holding. I agree with the reasoning of the Fifth District in Taylor and Randall and conclude that it supports reversal of the final judgment as to Mrs. Sammons.

In Taylor, the injured plaintiff died while the personal injury and loss of consortium claims he and his wife had filed in their medical malpractice action were pending. 555 So. 2d at 877. The ninety-day period for substituting parties passed without a substitution, and the trial court dismissed the action pursuant to rule 1.260(a)(1). Id. at 877-78. The Fifth District affirmed the dismissal of the husband's personal injury action because it was abated by his death. Id. at 878-79. However, the court reversed the dismissal of the wife's loss of consortium claim. Id. at 879. The court concluded, "The wife's cause of action for loss of consortium, while derived from the personal injury to the husband, survives the death of her husband-patient, whose own personal injury action did not survive his death." Id. at 878.

In AC&S, the Third District declined to follow Taylor and determined that a wife's loss of consortium action did not survive the abatement of her husband's personal injury action upon his death. 703 So. 2d at 494. The court reasoned that a cause of action for loss of consortium is a derivative right in that the entitlement to recovery is dependent upon the other spouse's having a viable personal injury cause of action against the defendant. Id. at 493-94 (citing Gates v. Foley, 247 So. 2d 40, 45 (Fla. 1971)). The Third District found support for its position in the legislature's provision in the Wrongful Death Act for damages that are inclusive of a spouse's damages for loss of consortium. Id. at 494. The court also found significant that the Act provided for recovery from the date of injury rather than the date of death. Id. at 494-95.

- 12 -

In <u>Randall</u>, the Fifth District reaffirmed its holding in <u>Taylor</u> that a wife's loss of consortium claim survives the death of her husband and corresponding dismissal of his personal injury action. 140 So. 3d at 1121. The court stated "that 'Florida case law recognizes that loss-of-consortium is a separate cause of action belonging to the spouse of the injured married partner, and though derivative in the sense of being occasioned by injury to the spouse, it is a direct injury to the spouse who has lost the consortium.' " <u>Id.</u> (quoting <u>Orange Cty. v. Piper</u>, 523 So. 2d 196, 198 (Fla. 5th DCA 1988)). And the court noted that Florida courts have repeatedly recognized the existence of a derivative cause of action for loss of consortium in the absence of a primary cause of action for personal injury. <u>Id.</u> (citing <u>Gates</u>, 247 So. 2d at 41; <u>Ryter v. Brennan</u>, 291 So. 2d 55, 57 (Fla. 1st DCA 1974); <u>Resmondo v. Int'l Builders of Fla., Inc.</u>, 265 So. 2d 72, 73 (Fla. 1st DCA 1972)).

Finally, the <u>Randall</u> court rejected the Third District's reliance in <u>AC&S</u> on the fact that the legislature provided for damages that are inclusive of a spouse's loss of consortium damages in the Wrongful Death Act. 140 So. 3d at 1121. The court noted that the Third District's analysis "implicitly concluded that because the surviving spouse can recover from the date of injury, the loss of consortium from the date of injury merges with the continuing injury suffered after death, and the surviving spouse therefore recovers" under the Act. <u>Id.</u> However, the Third District did not consider situations in which the injured spouse dies from an injury that is not related to the personal injury action. In such a case, the surviving spouse could not bring an action under the Act and "would lose a vested right to recover for a loss of consortium from the

date of injury to the date of death." Id. The Third District concluded this result is not what the legislature intended. Id.

I agree with the Fifth District's reasoning in Randall. While a loss of consortium claim is a derivative right, it does not require a simultaneous personal injury action and may be sustained unless the underlying personal injury action has been ruled upon on the merits. Mrs. Sammons' claim for loss of consortium thus survives the dismissal of Mr. Sammons' personal injury claims for the failure to timely substitute under rule 1.260(a)(1). Therefore, I would reverse the final judgment as it pertains to Mrs. Sammons' claim for loss of consortium and remand for further proceedings.

One final observation, if we were to affirm the dismissal of Mr. Sammons' claims but reverse as to Mrs. Sammons' loss of consortium claim, we would not be in conflict with the Third District in AC&S because there is an important distinction between the two cases. In this case, Mr. Sammons' personal injury action did not abate under section 768.20, Florida Statutes (2015). In fact, the Sammons concede that Mr. Sammons' death was not caused by the personal injuries that gave rise to this medical malpractice action. Thus, unlike the wife in AC&S, Mrs. Sammons cannot recover damages for her loss of consortium under the Wrongful Death Act. Indeed, this case involves the exact situation the Randall court sought to avoid. If Mrs. Sammons' claim did not survive the dismissal of Mr. Sammons' personal injury action for failure to timely substitute, she would be deprived of her right to damages for her loss of consortium from the date of Mr. Sammons' injury to the date of his death.

## IV. Conclusion

Because the trial court's finding that Counsel failed to establish excusable neglect is based on a credibility determination that is supported by the record, I would affirm the final judgment as it pertains to Mr. Sammons' claims. However, because Mrs. Sammons' loss of consortium claim survives the dismissal of Mr. Sammons' personal injury action under rule 1.260(a)(1), I would reverse the final judgment as it pertains to Mrs. Sammons.